IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEGAN G..,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 05813 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Megan G.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 20, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 27, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I. Procedural History

On May 31, 2017, Plaintiff filed a claim for DIB and SSI, alleging disability since January 26, 2013 due to post-traumatic stress disorder, anxiety, panic disorder, a dissociative disorder, hypertension, and rheumatoid arthritis. [R. 107-108.] Plaintiff's claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 10, 2019. [R. 41.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 41-43.] A subsequent hearing before the ALJ was held on September 5, 2019. [R. 60]. Plaintiff personally appeared at the hearing and was represented by counsel. [R. 60-62.] Vocational expert ("VE") Jacqueline Bethel also testified at the second hearing. [R. 73.] On October 15, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 33.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

### II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 18-19.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 5, 2015, the amended alleged onset date. [R. 19.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: seizure/convulsion disorder, depression, post-traumatic stress disorder, and obsessive-compulsive disorder. [R. 20-21.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings

2

of impairments (a "Listing"). [R. 21-24.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional level, with certain non-exertional limitations. [R. 24-31.] Plaintiff could never climb ladders, ropes, or scaffolding; should avoid all exposure to work hazard such as unprotected heights and dangerous moving machinery; and should not operate motor vehicles for work purposes. [R. 24-31.] Plaintiff could understand, remember, and carry out no more than simple routine tasks, performing the same tasks day in and day out with no public contact for work-related purposes and no more than occasional contact with coworkers and supervisors. [R. 24-31.] Plaintiff should not be required to engage in any teamwork situations and could not perform tandem tasks, but Plaintiff can work independently. [R. 24-31.] Plaintiff could not engage in work where a machine sets the pace. [R. 24-31.] At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work as a dog groomer, nursery laborer, store laborer, nor merchandise displayer. [R. 31.] At step five, the ALJ concluded that based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 32-33.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking

3

whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is

4

not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II. Analysis

Plaintiff makes three arguments challenging the ALJ's decision, including: (1) the ALJ improperly assessed Plaintiff's mental RFC; (2) the ALJ improperly assessed medical opinion evidence; and (3) the ALJ incorrectly assessed Plaintiff's subjective symptoms and limitations. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in assessing Plaintiff's mental RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

The Court agrees with Plaintiff that the ALJ improperly assessed Plaintiff's mental RFC. Plaintiff argues that the ALJ's mental RFC is akin to the "simple, routine tasks" formulation that the Seventh Circuit has indicated is generally inadequate to "account for problems of concentration, persistence or pace." *Crump*, 932 F.3d at 570. Indeed, the Seventh Circuit has explained that "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id*. In some circumstances, however, a limitation to unskilled work can account for CPP difficulties if the record indicates that the limitation addresses the underlying symptoms. *Christopher G. v. Kijakazi*, No. 19 CV 5046, 2022 WL 1989119, at *4 (N.D. Ill. June 6, 2022) (collecting cases). This includes instances where a medical opinion

5

adequately translates a finding of moderate CPP limitations into an RFC that accounts for a claimant's specific impairments. *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (affirming where agency consultants "translated" moderate CPP checklist ratings into an RFC that claimant "could carry out simple instructions and make simple decisions with no significant limitation"); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) ("The ALJ drew this restriction from the opinion of the medical expert, Dr. Rozenfeld, which is a permissible way of "translating" medical evidence into work-related restrictions."). "The question to be answered in every case is whether the ALJ has adequately explained, with support from the medical record," how the identified restrictions in the RFC address "the claimant's specific concentration, persistence, or pace limitations." *Christopher G.*, 2022 WL 1989119, at *4.

In this case, the ALJ accounted for Plaintiff's moderate concentration, persistence, and pace limitations by limiting her in the RFC to simple, routine tasks, and performing the same tasks day in and day out. [R. 23-24.] The ALJ also precluded Plaintiff from performing work where a machine sets the pace and accounted for Plaintiff's moderate limitations in social interaction by precluding Plaintiff from public contact and teamwork and by limiting Plaintiff to only occasional contact with coworkers and supervisors. [R. 23-24.] The ALJ, however, neither relied on a medical opinion's translation of Plaintiff's moderate concentration, persistence, and pace limitations into an RFC, nor provided a meaningful, reasoned explanation for why the particular restrictions she identified in the RFC accounted for Plaintiff's moderate concentration, persistence, and pace limitations.

6

The ALJ rejected every medical opinion in the record. The ALJ found the opinions of two state agency consultants (that Plaintiff did not have a severe mental health impairment) to be unpersuasive, noting that the consultants did not see the entire record that supported Plaintiff's limitations. [R. 28.] The ALJ also, however, rejected the opinions of every one of Plaintiff's treating medical providers. The ALJ rejected as unpersuasive the letters from therapist Katrina Drummond and treating psychiatrist, Dr. Gautam Sharma, noting that they were inconsistent with the Social Security Act (with respect to Dr. Sharma's letter, because it "is not consistent with criteria used by the Social Security Act to determine disability" and because it "does not use a function-by-function analysis"; with respect to Drummond's letter because it was "not an opinion as defined by the Social Security Act"). [R. 29.]

More importantly, the ALJ rejected as unpersuasive the opinions of therapist Lauren Rzepka and psychiatrist Dr. Jerry Gibbons, both of whom opined that Plaintiff had likely work-preclusive limitations. [R. 29-30.] Rzepka opined in September 2017 that Plaintiff had marked restrictions in her daily activities, socialization, concentration, and attention. [R. 992-993.] She did so again in August 2019, adding that Plaintiff would be unable to function in a competitive work setting on a full-time basis. [R. 1498-1499.] Dr. Gibbons noted that Plaintiff's mental limitations would preclude for 15% or more of an eight-hour workday performance of mental abilities involving understanding and memory, sustained concentration and memory, social interaction, and adaptation, and that Plaintiff would be off task more than 30% of the workday and absent six or more days per month. [R. 29-30, 996-999.] The ALJ found each of these opinions to be unpersuasive. [R. 29-30.] The ALJ thus did not draw the mental restrictions she identified in the RFC from any medical opinion. Indeed, no medical opinion noted that Plaintiff's CPP

limitations could be accounted for by a restriction to simple, routine activities and a prohibition on work where a machine sets the appropriate pace.

In this case, the ALJ's rejection of all of the opinion evidence that provided any meaningful assessment of Plaintiff's mental RFC "created an evidentiary gap that rendered the ALJ's RFC unsupported by substantial evidence." *Ana M.A.A. v. Kijakazi*, No. 19-CV-7559, 2021 WL 3930103, at *2 (N.D. Ill. Sept. 2, 2021). The Seventh Circuit has explained that "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). Although an ALJ need not adopt any particular medical opinion in crafting the RFC, "an ALJ cannot reject all the relevant medical RFC opinions and then construct a 'middle ground' and come up with [her] own RFC assessment without logically connecting the evidence to the RFC findings." *Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 WL 3773291, at *5 (N.D. Ill. Aug. 25, 2021) (cleaned up). Nor may an ALJ "play doctor" by "using her own lay opinions to fill evidentiary gaps in the record" caused by the absence of credited medical opinion evidence. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010).

Here, the ALJ neither relied on medical opinions nor logically connected the record evidence to her RFC findings with respect to Plaintiff's CPP limitations. Although the ALJ repeatedly noted that the restrictions included in the RFC accounted for Plaintiff's concentration difficulties, (R. 29-30), the ALJ did not explain *why* that was the case, or identify which records suggested that Plaintiff's ability to concentrate was related to the complexity of the task confronting her. Instead, the ALJ appeared to engage in the precise logical leap the Seventh Circuit has indicated is impermissible—the ALJ simply assumed, without a link to the record evidence, that a restriction to simple, routine tasks and no machine-paced work accounted for Plaintiff's

8

moderate CPP limitations. *See, e.g., Crump*, 932 F.3d at 570; *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace."); *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.").

Moreover, this case is unlike the cases in which the Seventh Circuit has suggested that a limitation to simple, routine tasks (or a similar formulation) appropriately accounts for the claimant's symptoms. While the ALJ included in the RFC social limitations and limitations related to stress, the ALJ did not find that Plaintiff's difficulties with concentration, persistence, and pace only arose when Plaintiff encountered particularly stressful tasks or was around other people. *Cf. Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (affirming limitation to simple, routine tasks with additional social restriction where claimant's "impairments surface[d] only when he is with other people or in a crowd"). Instead, the ALJ contrasted therapy and psychiatry records noting that Plaintiff was hyperverbal, tangential, anxious, agitated, and required frequent redirection (which was at times difficult) with other (less consistent) records suggesting plaintiff at times had good insight and judgment, normal perception, and was more focused and easier to follow. [R. 23-24.] None of the records cited by the ALJ suggested that Plaintiff's concentration limitations arose only or largely around other people or while performing complex or stressful tasks. [R. 672, 688, 698, 721, 756, 764, 767, 775, 1117, 1119, 1145, 1428.] Indeed, the record reflected that Plaintiff was very frequently unable to focus or maintain concentration and required

9

redirection in therapy and while completing tasks, and that redirecting Plaintiff was often difficult.[3] [R. 547, 551, 557, 564, 569, 575, 597, 605, 610, 688, 764, 775, 802, 979, 993, 1145, 1498.] And though the ALJ indicated that she did not believe Plaintiff's frequent need for redirection would require restrictions beyond a limitation to routine, repetitive tasks, the ALJ never explained why Plaintiff's frequent need for redirection was related to the complexity of the task before her.

In short, the ALJ rejected every medical opinion relating to Plaintiff's mental RFC and filled in the resulting evidentiary gap with the unsupported assumption—repeatedly rejected by the Seventh Circuit, *see, e.g., Crump*, 932 F.3d at 570; *DeCamp*, 916 F.3d at 676; *Yurt*, 758 F.3d at 858–59—that a limitation to simple, routine tasks with no machine-pace work accounted for Plaintiff's moderate CPP limitations. The ALJ thus failed to build an accurate and logical bridge between the record and her mental RFC.

---

[3] The ALJ also at times noted that she did not believe that Plaintiff's difficulties with concentration and her need for consistent redirection were severe enough to require limitations beyond simple, routine work and a prohibition on work where a machine sets the pace, due to Plaintiff's activities of daily living, including the fact that she performed chores, drove, and lived alone. [R. 23-24, 28.] But this appears to be a textbook case of an ALJ improperly ignoring the "critical differences between keeping up with activities of daily living and holding down a full-time job." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). Although "it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability," the Seventh Circuit has "urged caution in equating these activities with the challenges of daily employment in a competitive environment." *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014). "The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). Here, the ALJ did not explain how Plaintiff's activities—which could be performed at her own pace and with some support from others—relate to Plaintiff's ability to concentrate or maintain an appropriate pace over the course of an eight-hour workday. Nor did the ALJ account for Plaintiff's limitations in performing her tasks of daily living. For example, although the ALJ relied extensively on a third-party function report from Plaintiff's father to identify Plaintiff's daily activities [R. 23-24], she did not note that the report indicated that Plaintiff could take all day to perform basic household chores, that she at times had support from a roommate in taking care of her dog, and that she can only prepare simple meals. [R. 322-329.]

10

This is not to say that the ALJ was left without options once she rejected every available medical opinion. "If the ALJ found that the available medical evidence in Claimant's record was insufficient to make an RFC determination, it was her responsibility to recognize the need for additional medical evaluations." *Denson v. Berryhill*, No. 17 C 2220, 2018 WL 3546739, at *5 (N.D. Ill. July 24, 2018) (cleaned up). On remand, if the ALJ is unpersuaded by the available opinion evidence and unable to assess the record without making lay medical judgments or unsupported assumptions, she should seek out additional opinion evidence, including, for example, by contacting Plaintiff's treaters or by calling a provider to testify. *See, e.g., id*. at *5 ("The ALJ could have re-contacted Dr. Grady for further information, sent Claimant for an independent medical evaluation, or requested that a medical expert testify."); *Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007) ("ALJs may contact treating physicians for further information when the information already in the record is 'inadequate' to make a determination of disability[.]").

Because the ALJ's failure to properly assess Plaintiff's mental RFC on its own warrants remand, the Court need not evaluate the remaining issues identified by the Plaintiff. On remand, however, the Administration should not construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [20] is granted, and the Commissioner's motion for summary judgment [27] is denied. The Commissioner's decision

is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 11/22/2022

_____
BETH W. JANTZ
United States Magistrate Judge